WILLIAM VAN HORN

*v.*

MICHAEL C. CLARK, WILLIAM CLARK and DAVID RYMAN.

[Filed November 4th, 1899.]

1. Where, by an agreement, each party was to bear one-half of the expense of laying an aqueduct from a spring, to be their joint property, each to be liable to pay one-half of the expense of repairing, in the absence of any further agreement each was entitled to one-half of the water conveyed by the main pipe.

2. Where, by an agreement, each of two joint owners of an aqueduct was to tap with a three-quarter-inch pipe, and each party was to receive one-half of any amount collected from others for the privilege of using the water, the right of each party is limited to the insertion in the main pipe of a three-quarter-inch service pipe, and each is entitled to the same quantity of water.

3. Where the right of each party is limited to the insertion of a three-quarter-inch pipe in an aqueduct supplying them with water, and one of the parties makes other taps, and permits a third party to tap, without the consent of the other, he will be enjoined from using any taps other than those connected with the three-quarter-inch pipe, and the third party from tapping the pipe at all.

On final hearing.

The complainant has the right to draw water from a pipe running from a spring on the land of Mr. Clark. He brings this suit to restrain the defendants from infringing such right.

The spring from which the water flows, was, in 1852, upon the property of Abraham and Isaac Wildrick, about a mile from the tavern where they lived. At that time, about fifty yards from the tavern, on the same side of the public road, lived Mr. Blair. It appears that Blair and the Wildricks agreed to put in a pipe to conduct water from the spring to their respective houses. Blair, who had the main pipe of the spring laid, first paid all the expenses, one-half of which were repaid to him by the Wildricks. The main pipe line was an inch and a half in diameter, and ended in front of Wildricks' property, who tapped it with a three-quarter-inch pipe. Mr. Blair says that he himself tapped the main pipe with a three-quarter-inch pipe which he ran to his house, and which supplied with water the basement and first floor and bath-room upon that floor. The water ran into a box at the kitchen, and from the box ran into the bottom of a barrel sunk three feet in the ground at the barn and then continuously over the top of the barrel. The pipe also supplied a fountain in the yard. Besides using the water in this way themselves, Messrs. Blair and Wildricks permitted a Mr. Skinner to tap the main pipe and use the water to run a small machine.

In March, 1857, the Wildricks sold a part of their land through which this pipe ran to Jacob A. Skinner. The deed contained a reservation of all rights to the said pipe and a privilege to enter the property conveyed for the purpose of repairing and relaying and continuing the same on the said lands.

Van Horn v. Clark.

On March 30th, 1867, Skinner sold this portion of land to Vleite, who, on January 24th, 1874, sold it to John S. Ryman. Both of the two last deeds contained the same reservation as the first.

In January, 1866, Mr. Blair sold his property to John Moore, who afterwards sold it to the complainant, William Van Horn. The Wildricks, who still owned the tavern property, on October 1st, 1866, entered into a written agreement with John Moore, the then owner of the Blair tract. This written agreement recited that by a verbal agreement between the Wildricks and Blair these parties had procured the right to lay an aqueduct of iron pipes from a spring of water on lands of the Wildricks, through their lands, for the purpose of bringing the water from the spring to the village of Marksboro, immediately in front of and into the buildings belonging to the parties, the Wildricks being at half the expense and Blair at half, the said aqueduct to remain the joint property of the said parties and their several heirs and assigns, each party, their heirs or assigns, to have the privilege of entering on the said land for the purpose of repairing said aqueduct when repairs were necessary, doing no unnecessary damage to the lands, each party or their assigns to be at half the expense of all necessary repairs to the spring and main pipes. Also, each party, their heirs or assigns, should have the right and privilege to insert a pipe or pipes into the main pipe of not less than            at their own expense, for the purpose of supplying their own lands and buildings with water, and that each party should be entitled to the one-half of anything received from other persons for the privilege of using said water. The written agreement, after this was recited, proceeded :

"And whereas the said John Moore is now the owner of the Blair lot referred to in the said agreement, the said James Blair having conveyed the same to the said John Moore by deed bearing date the 22nd day of March A. D. 1866, also all the said Blair's rights, title and interest in the said aqueduct and water works, now, it is agreed by and between the parties that the said spring, aqueduct and water works shall remain under the control of the said parties, with the same rights and privileges as the said James Blair had at the time he conveyed the property to the said John Moore."

This agreement was signed by the Wildricks and Moore.

The Wildricks subsequently conveyed the Van Horn property to George B. Swain, subject to the right and use of the spring and pipe leading therefrom, on the lands owned by Moore. While Mr. Swain owned the tavern property and Mr. Van Horn, who purchased from Moore, owned the Blair property, they agreed to lay a new pipe in the place of the old one, which had become worn out. The expense was ultimately borne by Mr. Swain, Mr. Van Horn and a Mr. Budd, who, because of his payment, was accorded the privilege of using a part of the water. At the time of the laying of the new and larger pipe it was agreed between Mr. Swain and Mr. Van Horn that if any of their neighbors wanted water they would let them have it on certain conditions, but they having found on the first subsequent summer that there seemed to be a lack of water at the spring, they abandoned the idea of selling any water, and said they would not give anybody the right to use it. It was also agreed, at the time of the enlargement of the pipe, that each party should insert into the main pipe a three-quarter-inch pipe, to conduct water to his buildings. Mr. Swain says, at this time—the main pipe being laid on the opposite side of the street from the buildings—the three-quarter-inch pipe ran to a water-trough, and then a small pipe went into the hotel, behind the bar.

On April 9th, 1894, Mr. Swain sold the tavern property to the defendant William H. Clark, by a deed containing the reservation already mentioned. Besides this reservation contained in the deed, Swain called the attention of Michael C. Clark, who was the agent of his brother in making the purchase, to the agreement concerning the water rights between Moore and the Wildricks.

Since Clark's purchase of the tavern property, he has enlarged the hotel. The pipe that now leads from the main pipe is one and one-quarter inches in diameter. This pipe runs to within a foot or two of the horse-trough, and from it three pipes lead off from this pipe, viz., a three-quarter-inch pipe to the horse-trough, a three-quarter-inch pipe to the hotel, bar-room, lavatory,

water-closet, kitchen, &c., and another three-quarter-inch pipe leading towards the new portion of the hotel.  Besides these pipes leading to the hotel building, Mr. Clark has tapped the main pipe with two half-inch pipes leading to the stables.    In addition to these pipes, inserted for his own use, Mr. Clark had given permission to Mr. Ryman to tap the pipe that runs to Budd's, already mentioned.   The complaint of the complainant is that Clark together with Ryman have drawn water from the main pipe in such quantities as at times to deprive him of the quantity of water to which he is entitled.

*Mr. George M. Shipman* and *Mr. Flavel McGee,* for the complainant.

*Mr. William H. Morrow,* for the defendant David Ryman.

*Mr. Henry S. Harris,* for the defendant William H. Clark.

REED, V. C.

This case was before the chancellor upon demurrer to the bill. The opinion in the case is found reported in *11 Dick. Ch. Rep. 476.*    It was decided that Blair, by force of the executed parol agreement, and Moore, by the written agreement with the Wildricks, got a right to use the pipe as an aqueduct, and the spring as a source of supply which was appurtenant to their land, at least so long as the necessity for its use remained, and therefore when Clark purchased from the Wildricks, he took the property subject to this easement.

The questions now presented on this final hearing are, first, what is the extent of the complainant's rights? and second, have the defendants infringed them?

First, then, to what amount of water is the complainant entitled?   It is insisted by the counsel for the defendants that he is only entitled to that amount of water which he originally had.    It is insisted that each party originally put in a pipe three-quarter inches in diameter, and thus fixed the size of the pipe, which was left blank in the recited verbal agreement.

Indeed, it is insisted that Blair tapped with his three-quarter-inch pipe, not the main pipe but a five-eighths-inch pipe leading from the main pipe, and that, therefore, his right to water was thus fixed at such quantity as will flow through a pipe five-eighths of an inch in diameter.

But in my judgment the right of Mr. Van Horn and of Mr. Clark are similar. The terms of the verbal agreement, as they are stated by Mr. Blair and as they are recited in the written agreement between Moore and the Wildricks, demonstrate this. By the recited agreement each paid one-half of the expense of laying the aqueduct, and it was to remain the joint property of the parties, each being liable to pay one-half of the expense of repairing the pipe. Each originally had the right to insert a pipe of the same size, and in the absence of an agreement upon a size each had the right to one-half of the water conveyed by the pipe. When the pipe was relaid and a pipe of larger bore was substituted under the arrangement detailed by Mr. Swain, the parties obtained equal rights in the water conveyed by the new pipe. This, however, did not mean that each party was entitled to abstract one-half of all the water conveyed.

What portion of the amount of water conveyed by the pipe each was to take is fixed by the agreement and by its practical construction. As already remarked, the size of the pipe which each party was to insert into the main pipe for his own use was left blank, but it is apparent that any size that could be inserted must be common to both parties. They did each insert a three-quarter-inch pipe. When the main pipe was taken up and the new and larger pipe was substituted, it was agreed, said Mr. Swain, that each should lay a three-quarter-inch pipe to his premises.

These pipes would not carry all the water flowing through the main pipes, but it was not intended that they should. Mr. Budd, who then owned the Skinner property already mentioned, was permitted to use some water, and the agreement was still in force that each party should be entitled to one-half of anything received from other persons having the privilege of using the water. Whether or not the right of each party in the use of

the water was confined to the quantity that would flow from a three-quarter-inch pipe, it was clear that each party was entitled to the same quantity.

In either view, the testimony exhibits, as I shall hereafter show, that the defendants have used more than their share of the water carried by the new main pipe. But I am of the opinion that, under the agreement between the parties, the right of each was limited to the insertion in the main pipe of a service pipe three-quarters of an inch in diameter. Each could use or waste the water so delivered as he pleased, but the remaining water, I think, belonged to the parties jointly. They could agree to enlarge their own pipes or to permit anyone else to take water from the main pipe. The water was to be primarily for the personal use of the parties, and no use could be conceded to any other person without the joint consent of the parties. Assuming, therefore, that Mr. Van Horn and Mr. Clark each has a right to the flowage of water through a three-quarter-inch pipe, as it flowed when the main pipe was originally laid, the second question occurs whether this right of Mr. Van Horn has been infringed by the defendants.

The total area of the two-inch main pipe is 3.1416. Mr. Budd was permitted to use a three-quarter-inch pipe, having an area of .4416. This leaves an area of 2.7 for Clark and Van Horn or 1.3499 each. Now, there are in front of the hotel three three-quarter-inch pipes, the area of which is 1.3253. Then there are two one-half-inch pipes to the stable, having areas of .3297, making a total of 1.7180. Then there is a tap on Ryman's property, which is a three-quarter-inch pipe, with an area of .4416, making altogether an area of 2.1598. This would leave for Mr. Van Horn .54.

Assuming, therefore, that the Wildricks had the right to one-half of the water, after deducting Budd's tap, instead of taking 1.3499 they are taking 2.1598.

If Clark's right is limited to a pipe three-quarters of an inch in diameter, instead of taking .4416, he is taking nearly five times that amount.

In my judgment, as already remarked, without the consent

---

of Mr. Van Horn, Wildrick has no right to take any more water than can be drawn from the main aqueduct through a pipe three-quarters of an inch in diameter. He has no right himself, nor has he a right to permit any other person to withdraw from the main pipe a larger quantity of water. His permission to Ryman to tap the main pipe was entirely without authority. Now, the result of the abstraction of this amount of water has been to deprive Mr. Van Horn of the original flowage through his pipe. It is true that this effect is not continuous, but intermittent. The deprivation of water or force occurs when the taps other than those connected with the three-quarter-inch pipe to the Wildrick's tavern happen to be open at the same time that the Van Horn taps are in use. But these annoying interruptions are not infrequent, and against them Mr. Van Horn has the right to be protected. In respect to the purposes for which the water flowing through the three-quarter-inch pipes to Mr. Van Horn's is used, nothing need be said. It is clear that he has the right to use the amount of water which he originally used for the purposes to which it is now devoted.

I shall advise a decree enjoining the defendant Clark from using any taps other than those connected with a three-quarter-inch pipe leading to his hotel, and Ryman from tapping the pipe at all.